1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN J. ERBACHER, | Case No. 1:12-cv-00387-AWI-SKO-HC |
|     Petitioner, | ORDER SUBSTITUTING WARDEN JOE A. LIZARRAGA AS RESPONDENT |
|   v. | FINDINGS AND RECOMMENDATIONS TO DISMISS AND DENY THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), ENTER JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY |
| JOE A. LIZARRAGA, Warden, | |
|     Respondent. | **OBJECTIONS DEADLINE: THIRTY (30) DAYS** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the petition, which was filed on March 5, 2012, and transferred to this Court on March 14, 2012. Respondent filed an answer on May 17, 2012, and Petitioner filed a traverse on June 18, 2012.

    I.   <u>Jurisdiction and Order Substituting Respondent</u>

    Because the petition was filed after April 24, 1996, the

1

effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Kern (KCSC), located within the jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  Accordingly, the Court concludes that it has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. – , –, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent A. Hedgpeth (doc. 15, 9), who had custody of Petitioner at the Salinas Valley State Prison, his institution of confinement when the petition and answer were filed.  (Doc. 1, doc. 15 at 9.)  Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules).  <u>See</u>, <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).  The fact that Petitioner was transferred to the Mule Creek State Prison after the petition was filed does not affect this

Court's jurisdiction; jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.  Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990) (citing Smith v. Campbell, 450 F.2d 829, 834 (9th Cir. 1971)).

Accordingly, the Court concludes that it has jurisdiction over the person of the Respondent.  However, in view of the fact that the warden at Mule Creek State Prison is Joe A. Lizarraga, it is ORDERED that Joe A. Lizarraga, Warden of the Mule Creek State Prison, be SUBSTITUTED as Respondent pursuant to Fed. R. Civ. P. 25.[1]

II.  Procedural and Factual Summary

Petitioner is serving a sentence of 111 years to life imposed in the KCSC on June 18, 2009, for conviction of four counts of continuous sexual abuse of a child in violation of Cal. Pen. Code § 288.5(a), three counts of lewd and lascivious acts with a child under the age of fourteen years in violation of Cal. Pen. Code § 288(a), one count of sodomy with a child under the age of fourteen years in violation of Cal. Pen. Code § 286(c), and one count of oral copulation with a child under the age of fourteen years in violation of Cal. Pen. Code § 288a(c)(1)).  (LD 4 at 4-5, 8.)[2]  On March 24, 2011, the Court of Appeal of the State of California, Fifth Appellate District (CCA) affirmed the judgment on direct appeal. (LD 4 at 2, 23.)  On June 8, 2011, Petitioner's petition for review

---

[1] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a civil action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. It further provides that the Court may order substitution at any time, but the absence of such an order does not affect the substitution.

[2] "LD" refers to documents lodged by Respondent in connection with the answer.

1  was summarily denied by the California Supreme Court (CSC) without

2  citation of any authority or a statement of reasoning.  (LD 6.)

3      In a habeas proceeding brought by a person in custody pursuant

4  to a judgment of a state court, a determination of a factual issue

5  made by a state court shall be presumed to be correct; the

6  petitioner has the burden of producing clear and convincing evidence

7  to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1);

8  Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  This

9  presumption applies to a statement of facts drawn from a state

10 appellate court's decision.  Moses v. Payne, 555 F.3d 742, 746 n.1

11 (9th Cir. 2009).  The following statement of facts is taken from the

12 opinion of the CCA in People v. Justin Erbacher, case number

13 F058316, filed on March 24, 2011:

14     FACTUAL AND PROCEDURAL SUMMARY

15         Trial testimony

16     We briefly summarize the testimony of the complaining
17     witnesses only to explain the charges and the verdict.
       Additional evidence will be provided when necessary to
18     discuss the issues raised by Erbacher.

19     Victim 1 is Erbacher's adopted sister; she was 12 years
20     old at the time of trial. She described numerous incidents
       of molestation that took place at her home, at Erbacher's
21     apartment, and a former home. Generally speaking, Erbacher
       would expose himself to victim 1, tell her to take off her
22     clothes, and then lie on top of her. Victim 1 testified
       that Erbacher touched her more than 20 times in a bad way.
23     She had observed Erbacher touch Victims 2 and 3 in a bad
       way more than 10 times. On one occasion Erbacher put his
24     penis inside her vagina, on another occasion he put his
       finger inside her vagina, and on another occasion he put a
25     marking pen inside her vagina. Victim 1 testified that on
       each occasion the penetration was slight. She also
26     testified to an incident of sodomy. Victim 1 also had been
       molested repeatedly by her father.
27

28     Victim 2 also is Erbacher's adopted sister; she was 12

4

years old at the time of trial. Erbacher touched her vagina with his penis. He also sodomized her and participated in acts of oral copulation. She saw Erbacher touch the private parts of Victims 1 and 3. Erbacher told Victim 2 that if she told anyone what he was doing to her, he would go to jail. Victim 2 was probably in the third or fourth grade (age seven or eight) when she was first touched by Erbacher. She remembered being touched by Erbacher in two of their former homes and in Erbacher's apartment. She testified that Erbacher inappropriately touched her approximately 17 times.

Victim 3 also is Erbacher's adopted sister; she was five days short of her 14th birthday at the time of trial. Victim 3 testified that Erbacher put his finger in her vagina approximately 30 times. Erbacher also forced her to perform oral copulation on him. She recalled seeing Erbacher touching Victim 2's vagina and touching Victim 4. Victim 3 also had been molested by her father since she was about seven or eight.

Victim 4 was hospitalized at the time of trial. Her testimony was recorded at the hospital and the recording was played for the jury. Victim 4 testified that Erbacher began molesting her when she was approximately nine years old. Victim 4 and Erbacher were at a motel with their respective mothers. When their mothers were not in the room, Erbacher put his penis on Victim 4's vagina. Erbacher touched Victim 4's vagina with his hand about 30 times before he touched her vagina with his penis. Erbacher also made Victim 4 touch Victims 1, 2 and 3. Erbacher and Victim 4 also had intercourse on "[h]undreds" of occasions. Victim 4 explained how Erbacher would manipulate the house alarm and then sneak her out of the house. Victim 4 also described "[h]undreds" of occasions of oral copulation.

    Section 1108 evidence

C.H. was 14 years old at the time of trial. She recalled that one time when she was at Victim 3's house, Erbacher touched her vagina. She could not remember any details of the incident, including how Erbacher had touched her or whether she had her clothes on or off. She could not recall if she spoke with her mother about the incident.

5

C.H.'s mother, K.H., testified that in 1999 she was taking a bath with then five-year-old C.H. when C.H. "slithered" up to her face in an unusual manner, causing K.H. to become concerned. K.H. asked C.H. if anyone had touched her private areas; C.H. responded that Erbacher had licked her "privates."

### Defense case

Erbacher's defense consisted of establishing an alibi for one act and establishing that the victims were untruthful, confused, and were accusing him of committing molestations that had been committed by Erbacher's father.

...

### First motion for new trial

Erbacher moved for a new trial pursuant to Penal Code section 1181, subdivision (8), arguing he had discovered new evidence. The newly discovered evidence consisted of recantations from Victims 1, 2 and 3.

An evidentiary hearing was held on the motion at which the three victims testified. Victim 1 testified that Erbacher did not molest her. She stated that she was being molested by her father, and she did not want to accuse him because he had said that if she told anyone he was molesting her, he would kill himself and they would lose their house. To avoid this consequence, Victim 1 accused Erbacher because he looked like her father. She hoped the accusation against Erbacher would cause her father to stop molesting her.

Victim 2 also testified that Erbacher had not molested her and she had lied at trial when she accused him of doing so. She admitted she was being molested by her father. She did not want to accuse her father of molestation because he had said he would kill himself if she did so. She did not know why she had accused Erbacher of molesting her, but, once she had, she was afraid to recant because people would be mad at her.

Victim 3 testified that at trial she thought it was Erbacher who had molested her, but she was confused and later realized that it was her father who had molested her. She admitted that before trial she knew her father

was molesting her and testified that she did not want to tell anyone because he had said that if she did, he would kill himself and they would end up homeless. She could not recall why she accused Erbacher of molesting her.

The evidence established that before trial the father committed suicide after he discovered that one of the victims had accused him of molestation.

The trial court denied the motion for new trial. "Considering all the evidence that was presented and evaluating that testimony, and the demeanor of the child witnesses, including but not limited to [Victim 1] and [Victim 3]'s emotional responses to ... hearing ... their taped initial interviews, coupled with the robot-like testimony of [Victim 2], the confusion between the father and the defendant that took place, and as to which was the perpetrator, and the fact that two of them could give no explanation for accusing the defendant, the court is convinced that the newly remembered revelations of exculpatory evidence are a product of the children's love for their mother and the realization that their brother may spend the rest of his life in prison. [¶] The court finds this recantation evidence is not credible or worthy of belief of a jury on retrial.... The court further finds that [if] this evidence [were] presented at a retrial a different result would not be probable. Therefore, the motion for new trial is denied."

        First *Marsden* motion

At the next hearing, Erbacher made a motion to relieve counsel, claiming that counsel was ineffective and requesting appointment of a new attorney to make a motion for new trial based on trial counsel's incompetence. The trial court granted the motion.

        Motion to withdraw as counsel for Erbacher

Shortly after appointment, newly appointed counsel made a motion to be relieved as counsel. The trial court granted this unopposed motion. Attorney Charles J. Soria was appointed to represent Erbacher.

        *Pitchess*FN4 motion

7

FN4. *People v. Pitchess* (1974) 11 Cal.3d 531
(*Pitchess*).

A *Pitchess* motion was filed seeking various records from
the personnel file of Bakersfield Police Detective William
Darbee, the chief investigating officer for the
prosecution. The trial court conducted an in camera review
of Darbee's personnel file and concluded there were no
discoverable documents therein.

Second motion for new trial

Next, counsel filed a motion for new trial based on newly
discovered evidence. This motion was made after the
prosecutor discovered and disclosed that after trial
Victim 4 made allegations that she also had had consensual
sex with a foster brother for a period of three years
beginning in 2005. Counsel argued that the physical
evidence that Victim 4 had had intercourse could have been
explained by this relationship, rather than the alleged
relationship between Victim 4 and Erbacher. The foster
brother accused by Victim 4 denied any sexual contact with
her. The trial court denied the motion.

Third motion for new trial

Next, counsel filed a motion for new trial arguing that
original trial counsel had been ineffective. The motion
asserted that trial counsel had been ineffective because
he failed to (1) challenge and/or investigate a claim that
Erbacher's sister-in-law had made a report to child
protective services in 2002 about alleged abuse in the
house, (2) question additional witnesses about alleged
intimidation of the victims by Darbee, (3) question
witnesses about Victim 4's aberrant behavior that began
before Erbacher moved into Victim 4's household, which
allegedly would have contradicted testimony given by
Victim 4's mother, and (4) investigate allegations by
Erbacher that Victim 4 was being abused by her mother. The
trial court denied the motion.

Second *Marsden* motion

Prior to holding a hearing on the *Pitchess* motion, the
second motion for a new trial, and the third motion for
new trial, Erbacher made a motion to relieve Soria.
Erbacher contended, in essence, that Soria was not arguing

8

1      in the motion for new trial all of the issues that
2      Erbacher felt should be brought before the trial court.
     Erbacher also argued that counsel failed to request a
3      continuance to allow additional investigation into his
     claims. Soria asserted that he had addressed in the new
4      trial motion those issues that he felt had merit and
     refused to argue some of the grounds identified by
5      Erbacher because they would be better addressed in a writ
     of habeas corpus. The trial court concluded that the
6      dispute essentially was over tactics and denied the
7      motion.

8 People v. Justin James Erbacher, no. F058316, 2011 WL 1047083, *1-*4

9 (March 24, 2011) (unpublished).

10      III.   Denial of Petitioner's Second Post-Trial Motion
11            for Substitution of Counsel

12      Petitioner argues that he suffered a denial of his right to the

13 effective assistance of counsel guaranteed by the Sixth and

14 Fourteenth Amendments when the trial court denied his second post-

15 trial "Marsden"[3] motion to substitute new counsel for his appointed

16

17 counsel, Mr. Soria.  (Pet., doc. 1, 4.)  Petitioner contends Soria

18 declined to raise a claim that attorney Webb had failed to

19 investigate or call a defense witness, Mercedes Garcia, because of a

20 conflict of interest.  Petitioner argues that the state court

21 improperly found that the decision regarding the witness was

22 tactical because Soria declined to investigate as it would have

23

24 taken more time to investigate.  Petitioner contends the record

25 below did not explain why Garcia's testimony would have been

26

27 _____

28 [3] The reference is to People v. Marsden, 2 Cal.3d 118 (1970).

9

important.  (Doc. 17, 4-10.)  Respondent argues that no clearly

established federal law was contravened by the state court decision,

and the state court decision was reasonable in light of the

examination undertaken by the trial court and the absence of any

substandard conduct on the part of counsel.

   A. <u>Standard of Decision and Scope of Review</u>

  Title 28 U.S.C. § 2254 provides in pertinent part:

  (d) An application for a writ of habeas corpus on
  behalf of a person in custody pursuant to the
  judgment of a State court shall not be granted
  with respect to any claim that was adjudicated
  on the merits in State court proceedings unless
  the adjudication of the claim–

  (1) resulted in a decision that was contrary to,
  or involved an unreasonable application of, clearly
  established Federal law, as determined by the
  Supreme Court of the United States; or

  (2) resulted in a decision that was based on an
  unreasonable determination of the facts in light
  of the evidence presented in the State court
  proceeding.

  Clearly established federal law refers to the holdings, as

opposed to the dicta, of the decisions of the Supreme Court as of

the time of the relevant state court decision.  <u>Cullen v.</u>

<u>Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v.</u>

<u>Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362,

412 (2000).

  A state court's decision contravenes clearly established

Supreme Court precedent if it reaches a legal conclusion opposite

to, or substantially different from, the Supreme Court's or

10

concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.  A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  Williams, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable.  Id.  To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

    The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the

11

Petitioner bear the burden of proof.  Cullen v. Pinholster, 131

S.Ct. at 1398.  Further, habeas relief is not appropriate unless

each ground supporting the state court decision is examined and

found to be unreasonable under the AEDPA.  Wetzel v. Lambert, --

U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's

legal conclusion was contrary to or an unreasonable application of

federal law, "review... is limited to the record that was before the

state court that adjudicated the claim on the merits." Cullen v.

Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court

has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400.

Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding

brought by a person in custody pursuant to a judgment of a state

court, a determination of a factual issue made by a state court

shall be presumed to be correct; the petitioner has the burden of

producing clear and convincing evidence to rebut the presumption of

correctness.  A state court decision on the merits and based on a

factual determination will not be overturned on factual grounds

unless it was objectively unreasonable in light of the evidence

presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S.

322, 340 (2003).

With respect to each claim, the last reasoned decision must be

identified to analyze the state court decision pursuant to 28 U.S.C.

§ 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir.

12

2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Here, the last reasoned decision was the CCA's decision on direct appeal. (LD 4, LD 6.)  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).  This Court will thus "look through" the unexplained decision of the CSC to the CCA's last reasoned decision as the relevant state court determination.  <u>Id.</u> at 803-04; <u>Taylor v. Maddox</u>, 366 F.3d 992, 998 n.5 (9th Cir. 2004).

    B.   <u>The State Court Decision</u>

    The pertinent portion of the decision of the CCA is as follows:

V. Denial of Second Marsden Motion

As outlined above, Erbacher successfully moved the trial court to dismiss appointed counsel after the first motion for a new trial was denied so that he also could move for a new trial alleging he had received ineffective assistance of counsel. Soria eventually was appointed; he filed two motions for new trial, one alleging trial counsel was ineffective and the second on the basis of newly discovered evidence. Before the hearing on the second and third new trial motions, Erbacher moved to have the trial court dismiss Soria as his counsel. A second *Marsden* hearing was held and the trial court denied the motion. Erbacher argues that the trial court erred in denying his motion.

In a *Marsden* hearing, a defendant seeks to discharge his court-appointed counsel on the basis of inadequate representation. The trial court must allow the defendant to explain the basis of his claim and to relate specific instances of counsel's ineffectiveness. (*People v. Smith* (2003) 30 Cal.4th 581, 604.) Disagreements over tactical decisions do not entitle the defendant to a new attorney.

13

(*People v. Hart* (1999) 20 Cal.4th 546, 604.) "A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. [Citations.]" (*People v. Jones* (2003) 29 Cal.4th 1229, 1244–1245 (*Jones*).)

We review a denial of a *Marsden* motion for an abuse of discretion. (*Jones, supra*, 29 Cal.4th at p. 1245.) "Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would 'substantially impair' the defendant's right to assistance of counsel." (*People v. Webster* (1991) 54 Cal.3d 411, 435.)

We have reviewed the transcript of the hearing on Erbacher's motion, but need not recite all of the grounds urged by Erbacher because he argues only two issues. The first relates to a potential witness. Erbacher urged Soria to interview the potential witness, but Soria did not do so. Erbacher argued that the failure to do so entitled him to new appointed counsel. Soria responded that he made some unsuccessful attempts to locate the potential witness but primarily felt that the issue would be better preserved through a petition for writ of habeas corpus. The trial court concluded that Soria's decision not to pursue the potential witness for inclusion in the motion for new trial was a tactical decision.

We agree with the trial court. First, Erbacher presented no evidence of the potential witness's proposed testimony, or how she could help his case. Second, the issue of the lack of testimony from the potential witness, and potential ineffective assistance of counsel based thereon, was preserved for review. It has been said on numerous occasions that a claim for ineffective assistance of counsel is more properly addressed in a petition for writ of habeas corpus. "[N]ormally a claim of ineffective assistance of counsel is appropriately raised in a petition for writ of habeas corpus [citation], where relevant facts and circumstances not reflected in the record on appeal, such as counsel's reasons for pursuing or not pursuing a particular trial strategy, can be brought to light to inform the two-pronged inquiry of whether counsel's 'representation fell below an objective

standard of reasonableness,' and whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (*People v. Snow* (2003) 30 Cal.4th 43, 111.) Therefore, sound tactical reasons existed for not pursuing the potential witness at that time.

Next, Erbacher argues that the trial court erred in denying his motion because it relied on Soria's extensive experience in denying the motion. Once again, we disagree.

This argument is based on a narrow reading of the record. During the hearing, Erbacher asserted approximately 19 grounds of disagreement with Soria about how the case was being handled. Many of the assertions were factually inaccurate or determined by Soria to be unsupported by the record. Many of the assertions were based on Erbacher's perception of testimony that is not supported by the record. Many of the assertions related to tactical decisions that Soria had to make.

It is apparent from Erbacher's assertions that he had been doing legal research on his own, and probably discussing matters with other "jailhouse lawyers." The trial court confirmed that Erbacher had been doing legal research. After listening to all of Erbacher's assertions, the trial court asked Soria how long he had been practicing law. The trial court then addressed the merits of Erbacher's motion.

"Well, Mr. Erbacher, in a *Marsden* hearing, what I have to determine is whether or not representation by your present counsel, Mr. Soria, would substantially impair or deny your right to effective assistance of counsel now.

"Not necessarily what happened back with [trial counsel]. All right?

"But whether keeping Mr. Soria would affect your effective assistance of counsel.

"Mr. Soria has been doing this a long time. And case law on a *Marsden* is very clear that tactical disagreements between the attorney and the client do not qualify as good grounds for a

*Marsden*. And neither does whether or not you like counsel's advice as to how things should proceed here.

"I understand you're unhappy with [trial counsel's] representation of you at the trial. And it sounds like there may have been, indeed, some problems there. But how Mr. Soria proceeds on his ineffective assistance of counsel motion and whether he wants to include things in a motion or go by way of writ are clear tactical decisions on behalf of Mr. Soria, who's got 33 years of experience.

"And on that motion or that basis, sir, I'm going to deny your *Marsden* motion." (Italics added.)

It is clear that the trial court was not basing its denial of Erbacher's motion on Soria's experience, but instead was attempting to explain to Erbacher that while he, Erbacher, may have spent considerable time doing his own legal research, the tactical decisions in the case were to be made by Soria, and he had considerable experience in making those decisions. In other words, the trial court was attempting to explain to Erbacher that his experience in doing legal research did not qualify him as a legal expert, especially when compared to Soria's experience.

As both grounds asserted by Erbacher fail, we conclude that the trial court did not abuse its discretion in denying Erbacher's second *Marsden* motion.   (Footnote omitted.)

People v. Erbacher, 2011 WL 1047083, *11-*13.

### C.   Analysis

The Sixth and Fourteenth Amendments guarantee that an accused is entitled to the effective assistance of counsel at every stage of the criminal proceedings.  Gideon v. Wainwright, 372 U.S. 335, 345 (1963).  Even though an accused has counsel, his right to counsel may nevertheless be violated, such as where counsel fails to function in the active role of an advocate, Entsminger v. Iowa, 386

16

U.S. 748, 751 (1967); counsel has an actual conflict of interest that adversely affects the attorney's performance, Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980); or counsel provides ineffective assistance measured by the standard of Strickland v. Washington, 466 U.S. 668, 687-94 (1984).

The Court is not aware of any decision of the Supreme Court that holds that failure to conduct an inquiry into a motion to remove defense counsel or the failure to grant such a motion constituted a denial of the right to counsel. Arguably, no clearly established federal law requires an inquiry or habeas relief in the absence of an inquiry. Thus, the state court's denial of Petitioner's motion would not be an unreasonable application of clearly established federal law because there was no specific legal rule squarely established by the Supreme Court. See, Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). It could be concluded that Petitioner's allegation that the trial court erred in denying his motion to remove counsel does not present a cognizable claim on habeas review.

However, in Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000), the court reviewed the claim of a petitioner who alleged that the trial court had denied his motion to substitute counsel without conducting an inquiry adequate under People v. Marsden into his complaints of an irreconcilable conflict and breakdown in communications with his counsel. The court noted that the denial without a hearing of a motion to substitute appointed counsel based on allegations of an irreconcilable conflict implicates the defendant's Sixth Amendment right to counsel and thus is properly considered in a habeas petition. Id. at 1023 (citing Bland v. California Dep't of

17

Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994) and Hudson v. Rushen, 686 F.2d 826, 827–28 (9th Cir. 1982)).  The court explained that the focus of the analysis in a § 2254 proceeding is whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.A. § 2254(a).  Id. at 1025.  The court noted the question was whether the grounds for the substitution (there a conflict) prevented the effective assistance of counsel, id. at 1026, and it described the appropriate analysis for a court to undertake in evaluating a claim of Marsden error in a proceeding pursuant to § 2254 as follows:

> Thus, the ultimate constitutional question the federal courts must answer here is not whether the state trial court "abused its discretion" in not deciding [the petitioner's] motion, but whether this error actually violated [the petitioner's] constitutional rights in that the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.

Schell v. Witek, 218 F.3d at 1026.

Here, the trial court heard and identified Petitioner's complaints, gave Petitioner opportunities to offer more information regarding possible grounds for substitution of counsel, and inquired of counsel.  (18 RT 2494-2529.)  Petitioner's counsel responded with specific information that supported a conclusion that counsel had not failed to acknowledge or advance Petitioner's claims, but rather considered them and concluded that 1) the proper procedural vehicle for the ineffective assistance claims was habeas corpus, which would permit development of extra-record facts; and 2) any other matters not being raised before the trial court in motion proceedings were without sufficient substantiation to require further action.  (Id.

18

at 2506-2529.)  The state court conducted an examination sufficient to permit a determination of the status of communication between Petitioner and counsel and thereby ruled out the existence of circumstances that might amount to a constructive denial of counsel.

The accused is entitled to counsel free of actual conflicts of interest and with the ability to function as a loyal advocate; the accused is not entitled to a "meaningful relationship" with counsel or any particular degree of rapport.  Morris v. Slappy, 461 U.S. 1, 14 (1983).  Here, although there were disagreements between Petitioner and his counsel, denial of the motion was not contrary to or an unreasonable application of clearly established federal law.

The state court also inquired as to the nature of the disagreement and obtained sufficient information to determine that the disagreement over the choice of the correct procedural vehicle to raise Petitioner's claim of ineffective assistance of counsel did not demonstrate or suggest the ineffective assistance of counsel.  A disagreement over counsel's strategy or tactics that arises after counsel has thoroughly investigated the law and facts does not demonstrate constitutionally deficient representation.  Strickland v. Washington, 466 U.S. at 690-91; Raley v. Ylst, 470 F.3d 792, 799 (9th Cir. 2006) (citing United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981) (per curiam)).

Finally, Petitioner has not shown that any failure of counsel resulted in any prejudice to Petitioner.  Pursuant to Cullen v. Pinholster, 131 S.Ct. at 1398, review of the state court's decision should proceed solely on the record before the state court.  The potential grounds of impeachment of the victims advanced by Petitioner were not sufficient to undermine the victims' testimony

or otherwise upset the verdicts.  The trial court concluded in an objectively reasonable manner that Petitioner had not shown that any prejudice had resulted from the trial court's <u>Marsden</u> proceedings and ruling.

In sum, the facts as stated by the CCA support a finding that Petitioner did not show he suffered from a conflict of interest, a complete breakdown of the attorney-client relationship, the ineffective assistance of counsel, or other grounds that would prevent the effective representation of counsel required by the Sixth and Fourteenth Amendment and would require further inquiry by the trial court or the substitution of counsel.  Accordingly, it will be recommended that Petitioner's claim concerning the denial of his <u>Marsden</u> motion be denied.

IV.  <u>Denial of the Motion for a New Trial</u>

Petitioner contends he is entitled to relief because the trial court abused its discretion in rejecting the recantations of several victims and denied Petitioner's motion for a new trial.  (Doc. 1, 4.)  Petitioner argues that the trial court incorrectly assessed the credibility of the victims who recanted.  (Doc. 17, 11-13.) Respondent argues Petitioner's claim is based on an error of state law and does not entitle Petitioner to relief in a proceeding pursuant to 28 U.S.C. § 2254.

A.  <u>The State Court's Decision</u>

The CCA first summarized the basis of the motion as follows:

Erbacher's first motion for a new trial was based on the recantations of Victims 1, 2 and 3. The trial court held an evidentiary hearing and denied the motion, finding the

20

1
2
>           posttrial testimony unbelievable. Erbacher argues the
>           trial court erred in denying the motion.

3   *People v. Erbacher*, 2011 WL 1047083, *9.  The CCA then decided the

4   issue solely on the basis of state law, including statutes

5   authorizing the trial court to grant a new trial based on discovery

6   of new, material evidence and state cases interpreting the statutory

7   standards.  The CCA decided that although the evidence was newly

8   discovered, it did not render a different result probable on

9   retrial.  The CCA deferred to the trial court's considerable

10  discretion under state law, discussed the trial court's

11  consideration of appropriate factors, and determined that the trial

12  court properly concluded that the recantation testimony was not

13  credible because "the newly remembered revelations of exculpatory

14  evidence are a product of the children's love for their mother and

15  the realization that their brother may spend the rest of his life in

16  prison."  *People v. Erbacher*, 2011 WL 1047083, *11.
17
18
19          B.  Analysis

20      Federal habeas relief is available to state prisoners only to

21  correct violations of the United States Constitution, federal laws,

22  or treaties of the United States.  28 U.S.C. § 2254(a).  Federal

23  habeas relief is not available to retry a state issue that does not

24  rise to the level of a federal constitutional violation.  *Wilson v.*

25  *Corcoran*, 562 U.S. — , 131 S.Ct. 13, 16 (2010); *Estelle v. McGuire*,

26  502 U.S. 62, 67-68 (1991).  Alleged errors in the application of

27  state law are not cognizable in federal habeas corpus.  *Souch v.*

28  *Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002).  The Court accepts a

state court's interpretation of state law.  Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996).  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions.  Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication the state court's interpretation of state law was an attempt to avoid review of federal questions. Petitioner's claim of abuse of discretion in denial of the new trial motion is not cognizable in federal habeas proceedings.  See Washington v. Horel, no. CV 05-6043 JVS(JC), 2008 WL 4427221, *4 (C.D.Cal. Sept. 30, 2008) (collecting cases).  Thus, this Court is bound by the state court's interpretation and application of state law.

There is no showing that the state court's process or decision on the new trial motion offended a fundamental principle of justice or otherwise rose to the status of a Constitutional violation.  See Herrera v. Collins, 506 U.S. 390, 407-08 (1993).  Accordingly, it will be recommended that Petitioner's claim concerning the denial of his new trial motion be dismissed and denied.

V.   Right to Be Present at Trial

Petitioner contends his right to be present at all critical stages of the trial was violated when testimony of two victims was read back to the jury during deliberations without Petitioner's presence or a waiver of his right to be present.  (Doc. 1, 5.) Petitioner contends his right to be present under the Sixth and Fourteenth Amendments was violated based on circuit court authority, and because the testimony in question was so important, the court

reporter may have somehow influenced the jury.  (Doc. 17, 13-17.)
Respondent contends Petitioner is not entitled to relief because no
clearly established federal law holds that reading back testimony is
a critical stage and Petitioner suffered no actual prejudice that
would warrant habeas relief.

A.   The State Court Decision

III.  Erbacher's Presence During the Reading of Testimony

During deliberations, the jury asked for a portion of the
testimony to be read back. Erbacher was present during the
discussion about the issue between the trial court and
counsel. Although the record is not clear, it appears, and
we will assume for the purposes of this argument, that
Erbacher did not waive his right to be present during the
readback of the testimony. Erbacher claims the lack of
waiver resulted in a violation of his right to be present
during trial.

The right of a defendant to be present "at any stage of
the criminal proceeding that is critical to its outcome if
his presence would contribute to the fairness of the
procedure" is guaranteed by the due process clause of the
Fourteenth Amendment to the United States Constitution.
(*Kentucky v. Stincer* (1987) 482 U.S. 730, 745.) The issue
is whether the court reporter's reading of testimony to
the jury is a critical stage of the proceedings at which
the defendant's presence would contribute to the fairness
of the trial.

This court held in *People v. McCoy* (2005) 133 Cal.App.4th
974 that reading of testimony to the jury by the court
reporter is not a critical stage of the proceedings. Our
holding was premised on a lack of any authority from the
United States Supreme Court suggesting that a court
reporter reading testimony to the jury is a critical stage
of the proceedings and California Supreme Court authority
suggesting that such proceedings were not a critical stage
of the proceedings. For example, in *People v. Horton*
(1995) 11 Cal.4th 1068, in rejecting the defendant's claim
that error occurred because he did not personally waive
the right to be present when the court reporter read
testimony to the jury, the California Supreme Court
stated, "The reading back of testimony ordinarily is not

23

an event that bears a substantial relation to the
defendant's opportunity to defend [citations], and nothing
in the present record indicates that defendant's personal
presence would have assisted the defense in any way." (*Id.*
at p. 1121.)

In response to this authority, Erbacher cites three cases
decided by the Ninth Circuit Court of Appeals, *Turner v.
Marshall* (9th Cir.1995) 63 F.3d 807, 815,FN9 *United States
v. Kupau* (9th Cir.1986) 781 F.2d 740, 742, 743, and
*Bustamante v. Eyman* (9th Cir.1972) 456 F.2d 269, 274.FN10
Only *Turner* addressed the issue before this court, and we
are not persuaded by its reasoning. Moreover, even the
Ninth Circuit has acknowledged that the United States
Supreme Court has not recognized such a right, nor have
other jurisdictions. (*La Crosse v. Kernan* (9th Cir.2001)
244 F.3d 702, 707-708.) Therefore, even if we were not
bound by the decisions of the California Supreme Court,
which we are (*Auto Equity Sales, supra*, 57 Cal.2d at p.
455), we would reject Erbacher's argument.

> FN9. Overruled on other grounds in *Tolbert v.
> Page* (1999) 182 F.3d 677, 685.

> FN10. Overruled in *Campbell v. Wood* (9th
> Cir.1994) 18 F.3d 662, 672.

People v. Erbacher, 2011 WL 1047083, *8-*9.

        B.  Analysis

     Even where the accused is not confronting witnesses or evidence

against him, the Due Process Clause guarantees a criminal defendant

the right to be present "at any stage of the criminal proceeding

that is critical to its outcome if his presence would contribute to

the fairness of the procedure."

Kentucky v. Stincer, 482 U.S. 730, 745 (1987).  A defendant's

presence contributes to the fairness of a procedure when, in light

of the nature of the situation, defendant's presence would be useful

24

in ensuring a more reliable determination.  Id. at 747.  The right

is fundamental.  Rushen v. Spain, 464 U.S. 114, 117 (1983).

However, the Supreme Court has never held that reading back

testimony to a jury is a critical stage of the trial at which an

accused has a right to be present.  See LaCrosse v. Kernan, 244 F.3d

702, 707-708 (9th Cir. 2001) (holding that because the Supreme Court

had never addressed either the question of whether the right to be

present attached to a reading back of testimony or a case involving

a materially indistinguishable set of facts, a state court decision

denying relief could not be contrary to, or an unreasonable

application of, clearly established federal law).  An unreasonable

application of clearly established federal law under § 2254(d)(1)

cannot be premised on an unreasonable failure to extend a governing

legal principle to a new context where it should control.  White v.

Woodall, - U.S. -, 134 S.Ct. 1697, 1706 (2014).  Therefore, " 'if a

habeas court must extend a rationale before it can apply to the

facts at hand,' then by definition the rationale was not 'clearly

established at the time of the state-court decision.'"  Id. (quoting

Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).  In view of the

Ninth Circuit authority of Lacrosse v. Kernan, it cannot be said

that it is so obvious that the right to be present applies to the

procedure of reading back testimony that there could be no

fairminded disagreement on the question.  See White v. Woodall, 134

S.Ct. at 1706-07.

Even assuming Petitioner suffered a violation of the right to

be present, the error's harmlessness would warrant denial of

Petitioner's claim.  The Supreme Court has not held that absence of

a defendant from a critical stage of the trial is a structural

25

error; rather, "unless the deprivation, by its very nature, cannot
be harmless," a violation of the right to be present may be harmless
error.  Campbell v. Rice, 408 F.3d 1166, 1172 (9th Cir. 2005) (en
banc) (quoting Rushen v. Spain, 464 U.S. at 117 n.2 (1983) (per
curiam) (finding harmless an ex parte communication between the
trial judge and a juror regarding forgotten voir dire information));
Fisher v. Roe, 263 F.3d 906, 917-18 (9th Cir. 2001) (concluding that
reading back testimony without the knowledge or presence of the
defendant or defense counsel was a violation of the right to be
present, finding prejudice under Brecht v. Abrahamson, 507 U.S. 619,
623 (1993), and distinguishing Lacrosse v. Kernan on its facts);
Turner v. Marshall, 121 F.3d 1248, 1255 (9th Cir. 1997) (finding
harmless defendant's absence from the jury room during the reading
back of testimony because there were no circumstances suggesting any
irregularity or actual prejudice, and strong circumstantial evidence
connected the defendant to the crime).

Here, there is no indication that any problem arose while the
testimony was being read back that affected the verdict or the
fairness of the proceedings.  Multiple sources of direct evidence
supported the guilty verdict.  Accordingly, it will be recommended
that the Court deny Petitioner's claim of a violation of the right
to be present at trial.

VI.  Admission of Evidence of Uncharged Sexual Offenses

Petitioner contends that the admission of evidence that
Petitioner had committed other uncharged sexual offenses for the
purpose of showing propensity to commit sexual offenses violated his
right to due process.  (Doc. 1, 5.)  Petitioner argues the balancing
of prejudice against probative value under Cal. Evid. Code § 352 is

26

inadequate to save the admission of the evidence from constituting a due process violation. (Doc. 17, 22-26.) Respondent argues that no clearly established federal law precludes admission of propensity evidence.

Petitioner further contends that the evidence that Petitioner committed other uncharged sexual offenses should have been excluded under Cal. Evid. Code § 1108, and that admitting it for the purpose of showing propensity to commit sexual offenses violated the principles of People v. Falsetta, 21 Cal.4th 903 (1999) because the witness recalled little at the time of the testimony, the account lacked details, the alleged conduct was remote, Petitioner had not been convicted of a crime in connection with the conduct, and the witness's account contradicted her mother's account of the witness's previous revelations to her. (Doc. 1, 7; doc. 17, 18-22.)

A.   The State Court's Decision

The CCA addressed Petitioner's state law contention that admission of the testimony of C.H. and her mother was error or an abuse of discretion under Cal. Evid. Code §§ 1108 and 352 as well as his due process argument. In the CCA's discussion, the analysis of the two issues is intertwined. Thus, the CCA's decision on Petitioner's contentions is set forth in its entirety:

I. Admission of Testimony Pursuant to Section 1108

The prosecution moved before trial to admit the testimony of C.H. and her mother. The trial court granted the motion over Erbacher's objection and the witnesses testified as summarized above. Erbacher makes three arguments asserting the admission of this evidence was erroneous, requiring reversal of the judgment.

Section 352

27

Section 1108, subdivision (a) provides that in a prosecution for a sexual offense, "evidence of the defendant's commission of another sexual offense" is admissible "if the evidence is not inadmissible pursuant to Section 352."

In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), the Supreme Court rejected the defendant's due process challenge to section 1108. (*Falsetta*, at p. 917.) In reaching its conclusion, the Supreme Court found important the requirement that such evidence be subject to scrutiny pursuant to section 352. "In summary, we think the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge. As stated in [*People v.] Fitch* [(1997) 55 Cal.App.4th 172], '[S]ection 1108 has a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial. Such evidence is still subject to exclusion under ... section 352. [Citation.] By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. [Citation.] This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.] With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that ... section 1108 does not violate the due process clause.' (*Fitch, supra*, 55 Cal.App.4th at p. 183, italics added.)" (*Falsetta*, at pp. 917-918.)

Erbacher argues the trial court erred in failing to exclude the propensity evidence pursuant to section 352. Section 352 gives the trial court discretion to exclude evidence if the probative value of the evidence is substantially outweighed by the probability that admission of the evidence will (1) necessitate undue consumption of time, (2) create substantial danger of undue prejudice, (3) confuse the issues, or (4) mislead the jury. The trial court has substantial discretion in excluding evidence under section 352. (*People v. Thornton* (2007) 41 Cal.4th 391, 428.) We review a trial court's ruling on the

28

admission or exclusion of evidence for an abuse of discretion. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1130.) A trial court abuses its discretion if it acts in an arbitrary, capricious, or patently absurd manner that has resulted in a miscarriage of justice. (*People v. Williams* (2008) 43 Cal.4th 584, 634-635.)

Erbacher contends the trial court's ruling admitting the propensity evidence was an abuse of discretion because the acts testified to were remote in time and the testimony lacked details about the alleged molestation of C.H. We disagree.

We begin by recognizing the proposed testimony was extremely probative. Erbacher was charged with molesting four young girls. His defense consisted, in large part, of attacking the credibility of the victims. The propensity testimony established that Erbacher molested another young girl by committing an act of oral copulation. At least two of the current victims also alleged they were orally copulated by Erbacher. The similarity of the acts committed by Erbacher on the victims and on C.H. allowed the jury to infer that Erbacher had a propensity to molest young girls, and did so in this case. This is exactly the type of case the Legislature anticipated in which such evidence would be utilized. (*Falsetta, supra,* 21 Cal.4th at pp. 911-912.)

Nor do we think the propensity evidence was remote. It is true C.H. testified that Erbacher molested her approximately nine years before trial, but the testimony also established the Erbacher had been molesting the other victims for a period of years. Victim 4 testified that Erbacher began molesting her seven years before trial. The two-year difference is insignificant and establishes that the propensity evidence was not so remote as to require its exclusion.

Finally, the propensity evidence was not so vague as to require its exclusion. Understandably, C.H. was unable to provide a detailed description of the molestation. She was five years old at the time Erbacher molested her, and the act occurred nine years before she testified. The testimony of C.H.'s mother, K.H., however, clarified what had occurred. K.H. was an adult and was experiencing an event that had to have been traumatic for any parent. Understandably, she had a better recollection of the

event. The testimony of C.H. and K.H. was sufficient to permit the jury to evaluate the testimony properly. The trial court's decision to admit the testimony was not arbitrary or capricious.

Due process

Erbacher also argues that admission of the propensity evidence violated his Fourteenth Amendment right to due process of law. He recognizes that the California Supreme Court rejected this argument in *Falsetta*, but claims *Falsetta* should be reexamined in light of *Garceau v. Woodford* (9th Cir.2001) 275 F.3d 769 (*Garceau*).FN5

> FN5. *Garceau* was reversed on other grounds in *Woodford v. Garceau* (2003) 538 U.S. 202, 206-207.

As California Supreme Court precedent binds us, we reject this argument. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity Sales*).) Moreover, even if we were to consider the argument on the merits, we would reject it because *Garceau* is not persuasive.

*Garceau* involved a petition for writ of habeas corpus filed by a defendant after his conviction and death sentence were upheld by the California Supreme Court. The district court denied the petition. Garceau appealed and the Ninth Circuit Court of Appeals reversed, finding that the instruction which allowed the jury to use propensity evidence for any purpose was erroneous (a conclusion with which the California Supreme Court agreed), and the error was prejudicial (a conclusion with which the California Supreme Court disagreed).

*Garceau* properly is limited to a consideration of the correct instruction that should be given when propensity evidence is admitted. We do not read *Garceau* as a prohibition of all propensity evidence, nor has the Ninth Circuit applied *Garceau* in this manner. Indeed, it has upheld the introduction of evidence of prior sexual crimes pursuant to Federal Rules of Evidence, rules 413 and 414 FN6 (28 U.S.C.) when a defendant is being prosecuted for a sexual offense. (*U.S. v. Sioux* (9th Cir.2004) 362 F.3d 1241; *U.S. v. LeMay* (9th Cir.2001) 260 F.3d 1018.)

30

> FN6. All further references to rules are to the
> Federal Rules of Evidence unless otherwise
> specified.

In *LeMay* the Ninth Circuit utilized an analysis remarkably
similar to that used in *Falsetta* when it rejected a due
process challenge to introduction of prior acts of child
molestation admitted pursuant to rule 414. The Ninth
Circuit concluded that the balancing test required by rule
403 FN7 was the key to its holding. "Potentially
devastating evidence of little or no relevance would have
to be excluded under Rule 403. Indeed, this is exactly
what Rule 403 was designed to do. We therefore conclude
that as long as the protections of Rule 403 remain in
place so that district judges retain the authority to
exclude potentially devastating evidence, Rule 414 is
constitutional." (*LeMay, supra*, 260 F.3d at p. 1027.) Rule
403 is remarkably similar to section 352.

> FN7. Rule 403 states: "Although relevant,
> evidence may be excluded if its probative value
> is substantially outweighed by the danger of
> unfair prejudice, confusion of the issues, or
> misleading the jury, or by considerations of
> undue delay, waste of time, or needless
> presentation of cumulative evidence."

It is clear that *Garceau* does not require exclusion of all
propensity evidence. It also is clear that the Ninth
Circuit has not concluded that all propensity evidence
should be excluded.

People v. Erbacher, 2011 WL 1047083, *4-*7.

### B. Analysis

Petitioner appears to contend in part that the state court
erred or abused its discretion pursuant to Cal. Evid. Code §§ 1108
and 352, which provide that in a criminal prosecution for a sexual
offense, the admission of evidence of the defendant's commission of
another sexual offense or offenses is not prohibited if the evidence
is not inadmissible pursuant to Cal. Evid. Code § 352.  Insofar as
Petitioner challenges the state court's interpretation or

31

application of state law, Petitioner's claim is not cognizable in this proceeding.  28 U.S.C. § 2254(a).  Thus, it will be recommended that any state law claim be dismissed.

Regarding Petitioner's federal due process challenge to the admission of the testimony of C.H. and her mother, the Supreme Court has not yet clearly ruled that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ of habeas corpus.  Estelle v. McGuire, 502 U.S. at 75 n.5 (declining to state an opinion on whether a state law would violate the Due Process Clause if it permitted use of prior crimes evidence to show propensity to commit a charged crime).  Absent such clearly established federal law, it cannot be concluded that a state court's evidentiary ruling was contrary to, or an unreasonable application of, Supreme Court precedent under 28 U.SC. § 2254(d)()1).  An unreasonable application of clearly established federal law under § 2254(d)(1) cannot be premised on an unreasonable failure to extend a governing legal principle to a new context where it should control.  White v. Woodall, 134 S.Ct. at 1706 (noting that "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision'" and quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)); Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008), cert. den., Larson v. Belleque, 555 U.S. 871 (2008) (denying a due process claim concerning the admission of prior crimes evidence because the Supreme Court had expressly reserved decision on the question of

whether propensity evidence could ever violate due process, and thus the state court did not unreasonably apply clearly established federal law in determining that prior crimes evidence did not violate due process); Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006), cert. den., - U.S. -, 127 S.Ct. 1834 (2007) (denying a due process claim concerning the admission of past violent actions as propensity evidence in a second degree murder case for want of a "clearly established" rule from the Supreme Court).

The cases cited by Petitioner do not establish that he is entitled to relief.  In Spencer v. Texas, 385 U.S. 554 (1967), the Court held it was not a violation of due process for a state to enforce its habitual criminal statutes by alleging prior convictions in the indictment, introducing proof regarding past convictions, and instructing the jury that the priors were not to be taken into account in assessing guilt or innocence under the current indictment -- even where there was some possibility of collateral prejudice to the defendant.  In Estelle v. McGuire, 502 U.S. 62 (1991), the Court held there was no due process violation where the state court admitted evidence of prior injuries to a child in a trial of a father accused of killing the child, and the state court instructed the jury that the prior injury evidence could be considered for the limited purposes of determining if it tended to show a clear connection between the other two offenses and charged crime so that it might be concluded that if the defendant committed the prior offenses, he had a propensity to commit the charged offense.  The Court reasoned that the evidence was probative of the intent element of second degree murder and was not reasonably interpreted as propensity evidence in light of the instructions.  However, as

33

previously noted, the Court expressly reserved decision on the issue of whether a state law would violate the Due Process Clause if it permitted prior crimes evidence to show propensity to commit a charged crime.  <u>Estelle</u>, 502 U.S. at 75 n.5.

Petitioner cites <u>McKinney v. Rees</u>, 993 F.2d 1378 (9th Cir. 1993).  However, the <u>McKinney</u> case concerned not evidence of other, similar sexual acts as in the present case, but rather evidence that the defendant possessed knives several months before the murder; was proud of his knife collection; and occasionally strapped a knife to his body and used a knife to scratch the words "Death is His" on the door to his closet.  The charged murder was committed with a knife, but no murder weapon was ever identified.  The court held that the knife evidence was not relevant to any element of the prosecution's case, and the extensive questioning regarding this character evidence rendered the trial fundamentally unfair.  The Ninth Circuit Court of Appeals has interpreted <u>McKinney</u> and its constitutional underpinnings to prevent the introduction of propensity evidence only where the prejudicial effect of the evidence far outweighs its relevance and probative value.  <u>See</u> <u>United States v. LeMay</u>, 260 F.3d 1018, 1026-27 (9th Cir. 2001).

In contrast, the present case involved sexual acts that in terms of nature and circumstances were quite similar to the conduct constituting the charged offenses; the acts upon C.H. were not remote in time.  The evidence was strongly relevant, and given the multiple sources of evidence of Petitioner's guilt, the evidence did not have a substantial and injurious effect on the jury's verdict. Thus, the present case may be distinguished from <u>McKinney</u> based on relevance of the evidence and reduced possibility of prejudice.

Looking to the general constitutional standard, a state court's procedural or evidentiary ruling may be subject to federal habeas review if it violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by admitting evidence so arbitrary or prejudicial that is admission rendered the trial fundamentally unfair and violated fundamental conceptions of justice.   <u>Perry v. New Hampshire</u>, - U.S.-, 132 S.Ct. 716, 723 (2012); <u>Windham v. Merkle</u>, 163 F.3d 1092, 1103 (9th Cir. 1998); <u>Jammal v. Van de Kamp</u>, 926 F.2d at 919-20.   As the CCA noted, evidence of the Petitioner's prior sexual misconduct with a child victim was relevant because it strongly tended to show his propensity to commit the very same sort of abusive acts against the children whom Petitioner allegedly victimized in the present case. Because the charged offenses involved the same type of conduct as the prior bad acts, the prior bad acts were not necessarily more shocking than the charged crime.   Further, there was no indication that the witnesses who testified to the previous misconduct confused the jurors or consumed undue time.   The state court weighed appropriate factors to ensure that no undue prejudice would result from admission of the evidence.

It was objectively reasonably for the state court to decide that admission of the evidence did not violate due process because its relevance and strong probative value was not outweighed by any prejudicial effect.   Accordingly, it will be recommended that Petitioner's due process challenge to the admission of prior sexual misconduct be denied, and any state law claim concerning its admission be dismissed.

///

35

VII.   <u>Instruction on Propensity Evidence</u>

Petitioner argues that it was error to instruct the jury that it could find that Petitioner committed the uncharged sexual offenses by a preponderance of the evidence, and that the error resulted lowering the burden of proof required for conviction of the charged offenses, which is proof beyond a reasonable doubt. Petitioner contends it is reasonably likely the jury understood the instructions to permit conviction of the charged offenses by a preponderance of the evidence.  (Doc. 1, 7.)  In the traverse, Petitioner contends that the instruction necessarily undermined the other instructions on the burden of proof and presumption of innocence.  (Doc. 17, 26-28.)  Respondent contends that this Court is bound by the state court's application of the state law of the burden of proof and by circuit decisions that foreclose relief, and in light of all the instructions given, it was not likely that the jury misunderstood the instructions.

A.   <u>The State Court's Decision</u>

The decision of the CCA was as follows:

Jury instructions

The trial court instructed the jury with CALCRIM No. 1191 on the use of the propensity evidence.FN8 This instruction informed the jury that if the prosecution proved the propensity evidence by a preponderance of the evidence, then it could utilize that evidence in determining whether Erbacher had a propensity to molest children.

FN8. The jury was instructed as follows: "The People presented evidence that the defendant committed the crimes of a lewd and lascivious act that were not charged in this case. That crime, a lewd and lascivious act, has been defined for you in these instructions. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence

36

that the defendant, in fact, committed the uncharged offenses. Proof by a preponderance of the evidence-proof by a preponderance of the evidence (sic) is a different burden of proof from proof beyond a reasonable doubt. And what that is, you believe that it is more likely true than not true. That's what they are talking about there. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and, based on that decision, also conclude that the defendant was likely to commit and did commit the crimes as charged here. If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged crimes. The People must still prove each element of every charge beyond a reasonable doubt. [¶] Do not consider this evidence for any other purpose, except for the limited purpose that the defendant has a predisposition to commit sexual offenses."

Erbacher argues that by instructing the jury that it could consider the propensity evidence if the prosecution met the preponderance-of-the-evidence standard, the jury inevitably must have become confused and utilized the preponderance-of-the-evidence standard to convict him of the substantive crimes, in violation of his right to be convicted only if the prosecution proved the charges beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358, 364.) This argument has been rejected by the California Supreme Court. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1016.) We are bound by the decisions of the Supreme Court. (*Auto Equity Sales, supra*, 57 Cal.2d at p. 455.) We thus reject Erbacher's argument.

People v. Erbacher, 2011 WL 1047083, *7.

B. <u>Analysis</u>

The only basis for federal collateral relief for instructional error is that the infirm instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due process.  <u>Estelle</u>, 502 U.S. at 72; <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973); <u>see</u>, <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974) (noting that it must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment).  An ambiguous instruction may not be judged in isolation, but must be considered in the context of the instructions as a whole and the trial record. <u>Estelle</u>, 502 U.S. at 72.  In reviewing an ambiguous instruction, it must be determined whether there is a reasonable likelihood the jury applied the challenged instruction in a manner that violates the Constitution.  <u>Estelle</u>, 502 U.S. at 72-73 (reaffirming the standard as stated in <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990)).  The Court in <u>Estelle</u> emphasized that the Court has defined the category of infractions that violate fundamental fairness very narrowly, and beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.  <u>Id.</u> at 72-73.

Even if there is instructional error, a petitioner is generally not entitled to habeas relief for such error unless it is prejudicial.  The Supreme Court has held that harmless error analysis applies to instructional errors as long as the error at

issue does not categorically vitiate all the jury's findings. Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (citing Neder v. United States, 527 U.S. 1, 11 (1999) (quoting in turn Sullivan v. Louisiana, 508 U.S. 275 (1993) concerning erroneous reasonable doubt instructions as constituting structural error)).  In Hedgpeth v. Pulido, the Court cited its previous decisions that various forms of instructional error were trial errors subject to harmless error analysis, including errors of omitting or misstating an element of the offense or erroneously shifting the burden of proof as to an element.  Hedgpeth, 555 U.S. 60-61.  To determine whether a petitioner pursuant to § 2254 suffered prejudice from such an instructional error, a federal court must determine whether a petitioner suffered actual prejudice by assessing whether, in light of the record as a whole, the error had a substantial and injurious effect or influence in determining the jury's verdict.  Hedgpeth, 555 U.S. at 62; Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).

Finally, with respect to the burden of proof, due process requires that the government prove beyond a reasonable doubt every fact necessary to constitute the charged offense.  In re Winship, 397 U.S. 358, 364 (1970).  However, the Constitution requires only that the jury be instructed that the defendant's guilt be proved beyond a reasonable doubt; it does not require that any particular words be used in advising the jury of the government's burden of proof.  Jackson v. Virginia, 443 U.S. 307, 320, n.14 (1979).  Taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.  Victor v. Nebraska, 511 U.S. 1, 5 (1994).  The constitutional question is whether there is a reasonable likelihood that the jury understood the instructions to

1    allow conviction based on proof insufficient to meet the <u>Winship</u>

2    standard.  <u>Victor</u>, 511 U.S. 6; <u>Lisenbee v. Henry</u>, 166 F.3d 997, 999

3    (9th Cir. 1999), <u>cert</u>. <u>den</u>. 528 U.S. 829 (1999).

4         Likewise, instruction as to the presumption of innocence is

5    fundamental.  <u>See</u>, <u>Coffin v. U.S.</u>, 156 U.S. 432, 461 (1895)

6    (reversing where the trial court instructed on reasonable doubt but

7    refused to instruct on the presumption, and where other instructions

8    concerned shifting the burden of proof).

9         In <u>Schultz v. Tilton</u>, 659 F.3d 941, 943-45 (9th Cir. 2011) (per

10   curiam), <u>cert</u>. <u>den</u>. <u>Schultz v. Cate</u>, 132 S.Ct. 2436 (2012), the

11   court held that the terms of the instruction given did not violate

12   due process in a prosecution for committing a lewd act upon a child

13   under 14 years of age.  The particular use of the preponderance

14   standard was accompanied by an explanation that it was a different

15   burden of proof from that of beyond a reasonable doubt and that

16   regardless of any inference drawn as to propensity, the People

17   retained the burden of proof on each element of every charge beyond

18   a reasonable doubt.  Thus, the application of the standard of a

19   preponderance of the evidence was clearly circumscribed.  The jury

20   was expressly informed that a finding that the accused did commit

21   the uncharged acts was not sufficient by itself to prove guilt of

22   the lewd and lascivious acts charges, and that the People were still

23   required to prove each element of every charge beyond a reasonable

24   doubt.  The jury was also directed not to consider the evidence for

25   any other purpose.  In light of the limiting and cautionary language

26   of the instruction, it was not reasonably likely that a reasonable

27   juror understood the instructions to allow conviction based on proof

28

insufficient to meet the <u>Winship</u> standard.  <u>Schultz v. Tilton</u>, 659
F.3d at 943-45.

Here, the substance of the instructions given were the same as
those given in <u>Schultz</u>.  Further, the jury was instructed on the
presumption of innocence and the burden of proof.  (2 CT 559, 563.)
The jury was presumed to follow the instructions given.  <u>See</u> <u>Weeks</u>
<u>v. Angelone</u>, 528 U.S. 225, 234 (2000).  As in <u>Schultz</u>, if all the
instructions are considered together, they did not suggest an
impermissible definition of reasonable doubt to the jury, lower the
prosecution's standard of proof, or raise the amount of doubt
required for an acquittal.

Accordingly, it will be recommended that Petitioner's due
process challenge to the instruction on prior acts be denied.

VIII.  <u>Unanimity Instruction</u>

Petitioner contends that the failure to instruct the jury that
it must unanimously agree on the specific acts alleged to constitute
violations of Cal. Pen. Code § 288.5 in counts 1, 3, 6, and 8
constituted a violation of his right to due process.  (Doc. 1, 7-8.)
Petitioner argues his right to trial by jury under <u>In re Winship</u> was
violated by not having the jury unanimously agree on all the
specific acts.  (Doc. 17, 29-32.)  Respondent contends this Court is
bound by the state court's interpretation of state law, and there is
no clearly established federal law requiring the instruction in the
case of this statute.

Petitioner argues that under the California constitution, he
was entitled to a unanimity instruction.  (Doc. 17, 31.)

///

///

A.   The State Court's Decision

II. Unanimity

Erbacher was charged and convicted of continuous sexual abuse of a child, in violation of Penal Code section 288.5, subdivision (a). To establish a violation of this section, the prosecution was required to prove (1) Erbacher either resided in the same home as the minor or had recurring access to the child; (2) Erbacher engaged in three or more acts of substantial sexual conduct or lewd and lascivious conduct with the victim; (3) three or more months passed between the first and last act of substantial sexual conduct; and (4) the victim was under the age of 14 at the time of the acts. (Pen .Code, § 288.5, subd. (a); CALCRIM No. 1120.)

The jurors were instructed that while they must all agree that Erbacher committed three or more acts of substantial sexual conduct with each victim, they did "not all need to agree on which three acts were committed." This portion of the instruction is consistent with Penal Code section 288.5, subdivision (b), which states that "To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number."

Erbacher argues that allowing the jury to convict him, even though the jurors were not required to agree on which three acts of substantial sexual conduct he committed, violated his right to a unanimous jury. (Cal. Const., art. I, § 16; *People v. Collins* (1976) 17 Cal.3d 687, 693.) Erbacher's claim has been considered, and rejected, by this court in *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1294-1297 (*Whitham*). *Whitham* concluded jury unanimity was not required because the statute punished a course of conduct, not a specific act. (*Ibid.*) Numerous cases agree with *Whitham* (e.g., *People v. Adames* (1997) 54 Cal.App .4th 198; *People v. Gear* (1993) 19 Cal.App.4th 86; *People v. Avina* (1993) 14 Cal.App.4th 1303) and no case disagrees with its analysis. Nor has Erbacher cited any case on point.

Instead, Erbacher argues that *Richardson v. United States* (1999) 526 U.S. 813 requires the jury to agree unanimously on which acts constituted the continuous course of conduct. We disagree. In *Richardson*, the Supreme Court was

42

interpreting 21 United States Code section 848(a), which punishes anyone who participates in a continuing criminal enterprise. The issue was whether the statute required the jury to agree unanimously on the criminal acts the defendant committed in establishing a continuing criminal enterprise, or unanimously agree that the defendant participated in a continuing criminal enterprise. The majority concluded that the statute required the jury unanimously agree on the criminal acts committed by the defendant. (*Richardson*, at p. 824.)

The Supreme Court's interpretation of 21 United States Code section 848(a) is irrelevant to our analysis. If, as Erbacher contends, the issue is ripe for federal review, his petition will be granted by the federal courts. We, however, reject his argument because of the overwhelming authority cited in *Whitham* establishing that the jury need not agree unanimously on which acts constitute the continuous sexual abuse of a child, in violation of Penal Code section 288.5.

People v. Erbacher, 2011 WL 1047083, *7-*8.

>        B.   Analysis

Insofar as Petitioner premises his claim on the constitution of California, Petitioner's claim is not cognizable in this proceeding and should be dismissed.

Petitioner does not have a right to a unanimity instruction as a matter of federal constitutional law because criminal defendants in state court have no federal constitutional right to a unanimous jury verdict.  See Schad v. Arizona, 501 U.S. 624, 631-32 (1991) (rule that jurors are not required to agree upon a single means of commission of a crime applies to claim that they must agree on one of alternative means of satisfying a mental state element of crime); Apodaca v. Oregon, 406 U.S. 404, 406-14 (1972) (upholding state guilty verdicts of 11-1 and 10-2 and rejecting contention that there is a right under the Sixth and Fourteenth Amendments to a unanimous jury in state criminal prosecutions); Johnson v. Louisiana, 406 U.S.

43

356, 359-63 (1972) (rejecting a due process challenge to a 9-3 state jury verdict and concluding it was not inconsistent with the requirement of proof beyond a reasonable doubt).

In the absence of any holding from the Supreme Court that a federal constitutional right to a unanimous verdict exists, the state appellate court's rejection of Peterson's claim was not contrary to or an unreasonable application of any clearly established law from the U.S. Supreme Court.  Petitioner is not entitled to relief under 28 U.S.C. § 2254(d).

Petitioner's contention that the victim's generic testimony was insufficient to support his convictions is not supported by any United States Supreme Court authority that generic testimony is insufficient to support convictions for multiple sexual offenses; indeed, authority is to the contrary.  See, Morales v. Ocegueda, no. EDCV 11-802-PA (JEM), 2013 WL 6050476, at *9 (C.D.Cal. Nov. 13, 2013) (unpublished) (collecting district court cases upholding the sufficiency of generic testimony).

Petitioner relies on Richardson v. United States, 526 U.S. 813 (1999), which held in a federal prosecution for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a) that a federal jury must unanimously agree that the defendant committed some "continuing series of violations" but also that the defendant committed each of the individual "violations" necessary to make up that "continuing series."  Id. at 815.  However, that decision was based on statutory interpretation.  Id. at 817-24.  The constitutionality of such a construction was mentioned only in connection with the canon of statutory construction that encourages avoidance of constitutional questions.  Id. at 820.  The Court

44

expressly distinguished statutes such as Cal. Pen. Code § 288.5 on the ground that the California legislature had expressly declined to require a unanimity requirement in the context of special difficulties of proving individual underlying criminal acts.  Id. at 821.

Accordingly, it will be recommended that Petitioner's unanimity claim be dismissed and denied.

IX.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. <u>Id.</u>  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed. <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

X.   <u>Recommendations</u>

In accordance with the foregoing analysis, it is RECOMMENDED that:

1)   Petitioner's state law claims be DISMISSED without leave to amend;

2)   The petition for writ of habeas corpus be DENIED;

3)   Judgment be ENTERED for Respondent; and

4)   The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, - F.3d -, -, no. 11-17911, 2014 WL 6435497, *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **December 9, 2014**            **/s/ Sheila K. Oberto**
                                  UNITED STATES MAGISTRATE JUDGE